**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

MT. HAWLEY INSURANCE COMPANY,                          CASE NO.:

    Plaintiff,

v.

ENVIRON CONDOMINIUM II ASSOCIATION,
INC., and NICHOLAS R. PALERMO,

    Defendants.
_____/

**COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW, Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), by and through its undersigned counsel, and seeks declaratory judgment that Mt. Hawley owes no duty to defend or indemnify its Named Insured, Environ Condominium II Association, Inc. ("Environ"), for claims in a personal-injury lawsuit brought by Defendant Nicholas R. Palermo ("Palermo").  As grounds therefore, Mt. Hawley states:

**Jurisdiction, Parties and Venue**

1. This is an action for declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights surrounding questions of actual controversy that presently exist between Plaintiff and Defendants.

2. At all times material to this action, Plaintiff Mt. Hawley was a foreign surplus lines insurer with its principal place of business in Illinois.

3. At all times material to this action, Defendant Environ, located in Broward County, Florida, was a Florida not-for-profit corporation authorized to conduct business in Florida.

4. At all times material to this action, Defendant Palermo was a resident of Broward County, Florida.

5. The Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332(a) because it is a civil action in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

6. Though monetary damages are not sought in this declaratory judgment action, the Mt. Hawley insurance policy at issue represents funds in excess of $75,000.

7. This Court has personal jurisdiction over Defendants because they are either located in this judicial district, they have submitted to the jurisdiction of this Court, they conduct and transact business in this district and/or they conducted and transacted business during all times material to this action.

8. Venue is proper in Broward County, Florida, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Mt. Hawley's claims occurred in this district.

9. One of the events giving rise to this action is that Palermo has filed a lawsuit against Environ in the Circuit Court in and for Broward County, Florida, styled *Nicholas R. Palermo v. World Rainbow Painting & Restoration, LLC, et al* (the "Underlying Complaint" and/or "Underlying Lawsuit").

10. A true and accurate copy of the Underlying Complaint is attached as Exhibit "A."

### The Underlying Facts and Underlying Lawsuit

11. In the Underlying Complaint, Palermo alleges that he sustained bodily injury when he was in the parking lot on Environ's premises. *See* Exhibit "A."

12. Mt. Hawley is defending Environ from the Underlying Lawsuit under a reservation of rights, which includes the right to withdraw the defense and the right to deny coverage.

13. The Underlying Complaint alleges that, on December 15, 2016, Environ owned or was in possession of a building and land known as Environ Condominium Phase II Building 3 located at 7080 Environ Boulevard, Phase II Building 3, Lauderhill, Florida 33319 open to the public as a condominium. Exhibit "A" at ¶ 9.

14. On December 15, 2016, Environ and World Rainbow Painting & Restoration, LLC ("World Rainbow"), not a party in this lawsuit, allegedly removed the parking block to allow passage of a machine for restoring the premises. Exhibit "A" at ¶ 11.

15. Removal of the parking block left rebar exposed and sticking up from the ground. Exhibit "A" at ¶ 12.

16. Environ and World Rainbow allegedly failed to replace the parking block or otherwise warn of the hidden danger that was created by the rebar. Exhibit "A" at ¶ 13.

17. According to the Underlying Complaint, on the evening of December 15, 2016, Plaintiff returned home to the premises where he lives and tripped and fell over the piece of rebar that was left exposed and sticking out of the ground. Exhibit "A" at ¶ 14.

18. The Underlying Complaint alleges that "[t]he piece of rebar that was sticking out of the parking lot was left exposed by WORLD RAINBOW PAINTING & RESTORATION, LLC as they worked at the condo building when it removed a parking block in order to get its equipment next to the building." Exhibit "A" at ¶ 15.

19. Environ owned, maintained or operated one or more parking lots and parking blocks at, near or within Building 3. Exhibit "A" at ¶ 16.

20. Count I of the Underlying Complaint alleges negligence against Environ and World Rainbow. Exhibit "A" at ¶¶ 23-25.

21. Environ and World Rainbow allegedly owed a duty of care in which Environ and World Rainbow "must maintain the Premises [sic] reasonably safe condition." Exhibit "A" at ¶ 23.

22. The Underlying Complaint alleges that Environ and World Rainbow "had actual knowledge that the exposed rebar was present on the premises floor where Plaintiff tripped and fell, in that WORLD RAINBOW PAINTING & RESTORATION, LLC had removed a parking block and left rebar exposed." Exhibit "A" at ¶ 24.

23. The Underlying Complaint also alleges that Environ and World Rainbow "had constructive knowledge that the exposed rebar was present on the Premises ground where Plaintiff tripped and fell." Exhibit "A" at ¶ 25.

24. Environ and World Rainbow allegedly breached their duty of care by being "careless, reckless, and negligent in the ownership, operation, restoration, and/or maintenance and/or use of its property." Exhibit "A" at ¶ 30.

25. As a result of Environ's negligent failure to maintain the premises in a reasonably safe condition, Plaintiff tripped and fell over the exposed rebar causing injury. Exhibit "A" at ¶ 32.

26. Count I details the various ways in which Environ and World Rainbow were careless, reckless and negligent. Exhibit "A" at ¶ 34 a. – r.

27. Plaintiff seeks judgment for damages to be proven at trial for bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish and loss of capacity for the enjoyment of life and for all medical and incidental expenses, costs, pre- and post-judgment

interest at the maximum allowable rate on any amounts awarded and any and all such other and further relief as the court may deem just and proper. *See* Exhibit "A."

28. Mt. Hawley's investigation of Palermo's accident included, among other things, asking Environ to produce a copy of the contract between Environ and World Rainbow regarding World Rainbow's work implicated in Palermo's accident and the Certificate of Liability Insurance from World Rainbow.

29. On February 24, 2017, Environ's insurance claims coordinator, Neila Atkinson at Brown & Brown of Florida, Inc., sent an e-mail to Toni Smith with RLI/Mt. Hawley that attached various documents concerning Palermo's claim against Environ.

30. A copy of the February 24, 2017, e-mail from Nelia Atkinson to Toni Smith is attached hereto as Exhibit "B."

31. A copy of all of the documents attached to Nelia Atkinson's e-mail of February 24, 2017, to Toni Smith is attached hereto as Exhibit "C."

32. A copy of a contract entered into between World Rainbow and Environ, dated June 3, 2016, entitled "Concrete Contract for Building #3," which was included as one of the documents e-mailed to Toni Smith by Nelia Atkinson on February 24, 2017, is attached hereto as Exhibit "D."

33. On March 9, 2017, Toni Smith emailed Neila Atkinson acknowledging receipt of the contract between Environ and World Rainbow regarding World Rainbow's work in December 2016.

34. A copy of the March 9, 2017, email from Toni Smith to Neila Atkinson acknowledging receipt of the contract between Environ and World Rainbow is attached as Exhibit "E."

35. Environ and World Rainbow entered into a contract dated June 3, 2016, and signed on September 6, 2016, entitled "Concrete Contract for Building # 3."

36. The "Concrete Contract for Building # 3" entered into between Environ and World Rainbow is the same contract that was previously attached as Exhibit "D."

37. On May 15, 2018, William Deere at Brown & Brown of Florida, Inc., emailed Toni Smith at RLI Insurance/Mt. Hawley attaching a copy of a Certificate of Liability Insurance from World Rainbow dated July 28, 2017, showing commercial general liability insurance in effect from March 26, 2017 to March 26, 2018, and noting that Environ does not keep older certificates but disposes of them instead.

38. A copy of the May 15, 2018, email from Mr. Deere to Ms. Smith attaching the Certificate of Liability Insurance dated July 28, 2017, is attached as Exhibit "F."

39. Environ obtained a Certificate of Liability Insurance from World Rainbow dated July 28, 2017, showing commercial general liability insurance in effect from March 26, 2017 to March 26, 2018, which was not in effect at all times when World Rainbow's work was performed and was after the time when Palermo allegedly sustained his bodily injury.

40. The Certificate of Liability Insurance dated July 28, 2017, is attached as Exhibit "G."

## The Mt. Hawley Insurance Policy

41. Mt. Hawley issued renewal Commercial General Liability Policy number MGL0182037, effective from July 1, 2016, to July 1, 2017, to Environ (the "Policy").

42. A copy of the certified Policy is attached as Exhibit "H."

43. The Policy's Insuring Agreement under Coverage A states, in relevant part:

\*\*\*

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance**; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

***

44. The Policy's "Other Insurance" language provides:

***

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

***

4. **Other Insurance**

    If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

    a. **Primary Insurance**

        This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

    b. **Excess Insurance**

      **(1)**    This insurance is excess over:

***

      **(b)**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

***

45.    The Policy has the following relevant definitions:

***

**SECTION V – DEFINITIONS**

2.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

***

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

46.    The Policy has a *Tenants and Contractors – Conditions of Coverage* endorsement that provides, in relevant part:

Policy Number: MGL0182037        Mt. Hawley Insurance Company

<b>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</b>

<b>TENANTS AND CONTRACTORS – CONDITIONS OF COVERAGE</b>

We shall have no obligation to defend or indemnify any insured for any "bodily injury," "property damage" and/or "personal and advertising injury" arising directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant by any insured, such tenant's operations of any kind, or work by a "contractor" unless each and every of the following conditions is satisfied:

***

5.    Certificates of insurance are obtained from each and every "contractor" prior to commencement of such "contractor's" work.  Such certificates of insurance must list primary commercial general liability coverage in effect at all times

       the work is performed with limits equal to or greater than the limits of this policy.

**6.**     Written agreements are obtained from each and every "contractor" which hold harmless and indemnify the insured(s) against whom the claim is made for all injuries, damages, claims, and suits arising directly or indirectly from the "contractor's" work (including any work performed by the "contractor's" subcontractors or sub-subcontractors). Such agreements must expressly provide indemnification to the fullest extent permitted by law. Such agreements must be signed by the parties prior to the date of the "occurrence" or offense.

**7.**     The written agreements required in condition 6 must also require that the "contractor" will obtain additional insured coverage under the "contractor's" primary commercial general liability policy for each insured(s) against whom the claim is made. Such agreements must be signed by the parties to the agreement prior to the date of the "occurrence" or offense. Such agreements must require limits of additional insured coverage equal to or greater than the limits of this policy. Such agreements must state that the additional insured coverage is to be primary and noncontributory.

**8.**     The "contractor's" primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for the "bodily injury," "property damage," and/or "personal and advertising injury," and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy.

"Contractor" means any person or entity that any insured hires or contracts with for the performance of any work for construction, renovations, maintenance (including, but not limited to, snow removal), or repairs, regardless of where such work is performed, and regardless of whether such person or entity is described as a contractor, construction manager, general contractor, subcontractor, security guard, or by any other term.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**
**\*\*\***

### COUNT I
### Declaratory Judgment that the *Tenants and Contractors – Conditions of Coverage* Endorsement Precludes Coverage for the Underlying Lawsuit

47.    Mt. Hawley re-alleges and re-incorporates all allegations above.

48.    Palermo's alleged bodily injury arose directly or indirectly from World Rainbow's work at Environ's condominium premises.

9

49. The Policy carries a *Tenants and Contractors – Conditions of Coverage* endorsement (the "*Contractors' Endorsement*"). *See* Exhibit "H."

50. World Rainbow meets the definition of a "contractor" in the *Contractors' Endorsement.*

51. The *Contractors' Endorsement* imposes certain conditions (a total of four, numbered 5 through 8) that must be met for coverage to apply in circumstances involving "contractors."

52. Environ has not satisfied all of the conditions required by the *Contractors' Endorsement*.

53. *Contractors' Endorsement* Condition No. 5 requires that the insured obtain certificates of insurance from each and every "contractor" prior to the contractor's work. The certificates must list primary commercial general liability coverage in effect at all times the work is performed with limits equal to or greater than the limits of the Mt. Hawley policy. *See* Exhibit "H."

54. Environ obtained a Certificate of Liability Insurance from World Rainbow dated July 28, 2017, showing commercial general liability insurance in effect from March 26, 2017, to March 26, 2018, which was not in effect at all times when World Rainbow's work was performed and was after the time when Palermo allegedly sustained his bodily injury. *See* Exhibit "G."

55. Environ has not produced a Certificate of Liability Insurance from World Rainbow that listed primary commercial general liability coverage in effect at the time of the work.

56. *Contractors' Endorsement* Condition No. 6 requires that the written agreement between World Rainbow and Environ provide that World Rainbow will hold harmless and

indemnify Environ for all injuries, damages, claims, and suits arising directly or indirectly from the "contractor's" work (including any work performed by the "contractor's" subcontractors or sub-subcontractors). Such agreements must expressly provide indemnification to the fullest extent permitted by law. *See* Exhibit "H."

57. The "Concrete Contract for Building #3" simply states that "World Rainbow Painting & Restoration, LLC shall hold the Owner(s) harmless for all liens or damages arising from or caused by the work." There is no express indemnity language that World Rainbow will indemnify Environ to the fullest extent permitted by law, let alone any indemnity language whatsoever in the "Concrete Contract for Building #3." *See* Exhibit "D."

58. The contract that Environ entered into with World Rainbow did not require that World Rainbow written agreement between World Rainbow and Environ provide that World Rainbow will hold harmless and indemnify Environ for all injuries, damages, claims, and suits arising directly or indirectly from World Rainbow's work. See Exhibit "D."

59. *Contractors' Endorsement* Condition No. 7 requires World Rainbow to obtain additional insured coverage for Environ under its primary CGL policy with coverage limits equal to or greater than the limits in the Mt. Hawley policy. The additional insured coverage must be primary and noncontributory. *See* Exhibit "H."

60. The "Concrete Contract for Building # 3" states:

    **B.**    **LICENSE AND INSURANCE**

    1.    **World Rainbow Painting & Restoration, LLC** will be furnishing valid CGC license, insurance certificates covering liability and property damage, Worker's Compensation coverage and they shall be kept in force during the court of the work. **World Rainbow Painting & Restoration, LLC** shall hold the Owner(s) harmless from all liens or damages arising from or caused by the work.

*See* Exhibit "D."

61. Besides the "B. License and Insurance" provision in the "Concrete Contract for Building #3," referenced immediately above (in the enumerated paragraph immediately preceding the instant paragraph), no other provision in the "Concrete Contract for Building #3" addresses the obligation of World Painting with respect to Certificates of Insurance or insurance.

62. There is no additional insured coverage requirement in the "Concrete Contract for Building # 3." *See* Exhibit "D."

63. World Rainbow's liability insurance carrier is taking the position that Environ is not an additional insured under its commercial general liability policy issued to World Rainbow.

64. *Contractors' Endorsement* Condition No. 8 requires that World Rainbow's insurer agree to defend and indemnify Environ for claims for "bodily injury," "property damage," and/or "personal and advertising injury," and do so on a primary basis under a policy with limits equal to or greater than the limits of this policy. *See* Exhibit "H."

65. World Rainbow's insurance carrier has so far refused to defend Environ against the Underlying Lawsuit.

66. Because all four conditions pertaining to contractors in the *Contractors' Endorsement* were not met, Mt. Hawley owes no insurance coverage to anyone for the Underlying Lawsuit.

## RELIEF SOUGHT

WHEREFORE, Mt. Hawley requests that this Honorable Court enter a judgment declaring and adjudicating that:

(a) Mt. Hawley has no duty to defend or indemnify Environ and any other parties from and against the Underlying Lawsuit and any other claims or lawsuits that may arise out Palermo's alleged trip and fall on or about December 15, 2016;

(b) Mt. Hawley is entitled to withdraw its defense of Environ;

(c) Mt. Hawley is entitled to an award of taxable costs incurred in prosecuting this declaratory action; and

(d) Any other relief this Court deems just and proper.

Dated: February 8, 2019

Respectfully submitted,

/s/Fay E. Ryan

_____
FAY E. RYAN, ESQ.
Florida Bar No.:  0965944
fryan@butler.legal
RYAN K. HILTON, ESQ.
Florida Bar No.: 304610
rhilton@butler.legal
BUTLER WEIHMULLER KATZ CRAIG LLP
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Attorneys for Defendant, Mt. Hawley Insurance Company*